Mr. Justice Bay
delivered the opinion:
This case comes up before the Court of Appeal^ upon a special verdict found upon the construction of the will of William Wilson, deceased. The words in the will, upon which the dispute arose, are the following, viz. “ The rest and residue of my estate, both real and person? al, to be-equally divided between my two grandsons, Wilson and Thomas, and delivered to them at the age of 21 years. But should they die, .leaving no lawful issue, in that case, I give and bequeath the whole of my estate, both real and personal, to Richard, Thomas and Mary Godfrey, Rebecca Potts and Thomas Ballow, to be equally divided among them.” The special verdict then found that the negro in question formed a part of the residuary estate of the testator, and under the above will, came into the hands of his grandsons Wilson and Thomas $ that Wilson died under age, unmarried and without lawful issue : that Thoyias is now also, dead, having arrived at 21 years of age; and that the said Sarah, who intermarried, with the said Isaac Carr, and the plaintiffs William Wilson and Hannah Wilson, are the lawful issue of th^. said Thomas Wilson, deceased, apd have survived him. If, under the legal construction of the aboye Will, the court ■should be of the opinion that the testators grandson, Thomas Wilson, took an absolute estate in the residuary part of his grand fathers estate under the will, then they found for the defendant: And if on the contrary, the court should be of opinion that the said Thomas Wilson did not take an absolute estate in the residue of his grandfathers estate, then, they found for the plaintiffs 500 dollar^.
*68 On the part of the plaintiffs in this case, it was admitted that the negro in question had come into the possession of Thomas Wilson, the surviving grandson of the testator, and that he had sold him to the defendant. But it was contended that this sale was void, inasmuch as it was alleged that Thomas Wilson took only a life estate in the' residuary part of his grandfather’s estate; and upon his death, the whole went over to his heirs or children as purchasers under the aboye will, and that Thomas, the grandson, after the testator’s death, had nothing more than a life estate, and that no'act of his, during his life, could defeat the right-of his children or issue under the above will, who took as purchasers. In support of this construction, a great number of authorities were quoted and relied upon, some of which I shall remark upon in the course of this opinion. In opposition to this construction, it was contended by Wilson and Prioleau fpr the defendant, that by the clause of the will in question, an absolute estate was created and vested in the grandsons Wilson and Thomas ; and that upon the death of Wilson, unmarried and without lawful issue, it vested in Thomas the surviving grandson. That the word estate, mentioned in the clause of the will, constituted a fee; and that there were no words in the will controlling or altering the nature-of this estate, and that consequently the whole vested in the first taker, Thomas Wilson, (3 Mod. 220.) That it is an invariable rule in the construction of wills, that the intention of the testator shall always prevail wherever such intention can be discovered ; and that it wTas obvious in this pase that the intention of the testator was to give the residue of his estate, both real’ and personal, to his two grandsons, It is true, and they admitted that there was a contingency mentioned in the clause of the will, that in case of their dying without issue, the estate should go over to the Godfreys and others ; but as this contingency had actually happened and taken place, there was an end put to the contingent remainder. But the estate did not vest in Thomas', the surviving grandson upon the contingency of *69 bis having lawful issue, for it had vested before on his arrival at 21 years of age, although the contingent remainder depended on that event. These were the principal grounds relied upon on both sides of this case.
I have considered this case and the arguments of the counsel, and am of opinion that the words of the clause in this will may be considered as an executory devise of real •estate, and as a bequest or legacy of personal property, as it includes both real and personal estate, which depend on the same principles. Every devisee is in nature of a purchaser at law, and shall be preferred to the heir at law. (3 Co. 12. 2 ditle. 437.) If the court should admit of a difference between real and personal, it would be productive of great confusion. (Zdltk. 314.) Lord Kenyon laid down the same doctrine in 3D.fy East. 146, i. e. that the rules of law are the same in regard to real as to personal-estate.— If such a distinction, said he, existed in law, it would not agree with the rule, lex plus laudatur quando ralione prob.atur. Now let it be asked what is the true and legal operation of these words, either as to real or personal property ? For upon the solution of this question, every thing depends. But first, as it regards real estate. Indeed it was admitted in the argument, that the word estate will constitute a fee, unless controlled by other words. Now as to real estates, it is very clear, that “ a devise of all testator’s real estate,” passes a fee, as was determined in the case of Reeves vs. Winnington, 3 Mod. 45-6.— • The question there was, whether by these words the devisee had an estate for life or in fee, of the messuage in question, and the court were of opinion that the words ii all my estate,” were sufficient to pass an estate in fee simple. . This I take to be a leading case in the books, as it refers to no less than between 20 and 30 cases on that subject, a few of which I now refer to. (Cas. Temp. Talb. 110-11, 157. Lord Raymond, 187, 1327. Prec. in Can. 37, 364, 461. 2 Pr. Wms. 523, 335. 3 Pr. *70 Wms. 295, 193, 386. 4 Mod. 89.) Theword “ estate’* in a will passes a fee. (Salk. 236. 6 Mod. 106.) Sofa?' from its being necessary to insert words of inheritance in order to give this operation, words of restraint must be used to carry a less estate. (4 Bacon, 253.) Again, A. devises lands to his son and heirs, and if he die before the age of 21 years, and without heirs of his body then living, the remainder over, &c. He survives the 21 years, and sells the land, and the sale was adjudged good ; for he had a fee simple presently ; the estate tail being to commence upon a subsequent contingency. ( Collenson vs. Wright, 1 Sid. 148. 1 Eq. Cas. abr. 116.) The word estate is genus generalissimum, under a sweeping clause; the rest and residue of testator’s eífeets, real and personal, it carries the fee of lands. (4 Bac. abr. 253.)
2. As these words regard personal estates, when considered as a legacy or bequest, the law is equally clear that they will constitute a vested legacy of personal property. Mr. Burn, title Vested Legacies, says, if a legacy be adven to one, to be paid at a future day, this is a vested legacy, an interest which commences in presentí, although it be solvendum in futuro; and if the legatee dies before the day of payment, his representatives shall receive it at the time it would have become payable in case the legatee had lived. But if a legacy be given to one when he attains such an age, and he die before that timé, in such a case, it is a lapsed legacy. The same doctrine is laid down in 2 Black. 513 ; treating of legacies, he says, if a legatee die before the testator, the legacy is lapsed, and shall sink into the residuum, and if a contingent legacy be left to any one, as when he attains the age of 21 years, and he dies before that time, it is a lapsed legacy. But a legacy to one, to be paid when he attains the age of 21 years, is a vested legacy ; an interest which common* ces in preesenti, although it be solvendum in futuro; and if the legatee die before that age, his representatives shall receive it out of the testators personal estate, at the same time that it would have become payable in case the *71 legatee had lived, 1.2 Blade. 513.) So thatwhether the clause in the will be considered either as applicable to real or personal estate, it appears to me to- be equally- clear, that it carried over, both real and personal, an absolute estate to the surviving grandson of the testator, and that the whole vested in him upon the death of his brother Wilson. The law is so plain upon this head, and the authorities so numerous, that it would be almost a waste of time to quote them all, or to run through them on the subject. In 1 Eq. Cas. Jib. 294, it is laid down, that if a sum of money is»bequeathed to one at the age of 21 years, or day of marriage, to be paid him with’ interest, and he dies before either, yet the money shall go to his executors; (2 Vent. 342. 2 Chan. Cas. 155. 2 Salk. 415. 2 Vern. 199,) so decreed per Findc C. and thisdecjce was .affirmed upon an appeal in the house of lords : (1 Eq. Cas. Ab. 294.) But if money be bequeathed to one at the age of 21 years, and he dies before- that age, the money is lost. (2 Chan. Cas. 155. 2 Satk. 415.) The true rule and distinction in all these cases is this, that if a legacy be devised to one generally to be paid or payable at the age of 21, or at any other age, and the legatee die before that age, yet it is such an interest vested in the legatee, that his executor or administrator may sue for and recover it; for it is debitum in prossenti, though solvcndum in futuro ; the time being annexed to the payment, and not to the legacy itself. But if a legacy be devised to one at 21 years, or if, or when, he shall attain the age of 21, and the legatee die before that age, then it is a lapsed legacy. (1 Eq. Cas. Ab. 2 Salk. 415.)
It was admitted in the course of the argument, that the word “ estate” would carry over a fee, unless controlled by other words in the same will. Now what are the other words in this will which can control the strong language of the testator in this residuary clause ? Why they ar$ the following ; “ but should they die leaving no lawful issue, in that case, I give and bequeath the whole of my estate, both real and personal, to the Godfreys, &c. *72 to be equally divided between them.” The plain eon-" struction of which is, that if my said grandsons should die without leaving children, living at the time of their death, then the residue of my estate, real and personal, should go-over to the Godfreys, &c. But Thomas did arrive at the full age of 21 years, and left three children, lawful issue. The conditions, therefore, of his arriving at the age of 21, and having lawful issue, both happened, which prevented the estate from vesting in the Godfreys. It was admitted that if Thomas had never arrived at the age of 21, and had died without lawful issue,sin that case, it. would have been a good remainder in fee to the Godfreys, &c. but as the double conditions were both performed, it never could go over. There appears to me, therefore, to be nothing to control of defeat the strong operation of law in carrying over the estate to Thomas, the surviving grandson, agreeably to the devise of the testator. But it is said that the operation of law would carry over the estate to-the children of Thomas, the grandson, to his heirs and purchasers under the will of their great grandfather. The gentlemen, however, who argued this case for the plaintiffs did not point out the words of this will, to shew by what possible event or contingency the plaintiffs could be considered as purchasers under their great grandfathers will. There is not one sentence in the will which ever gave them the property, either expressly or impliedly. They were left as the law would unquestionably leave them, dependent upon the bounty of their father, and in case of his death, entitled to such proportion or proportions of his estate as he should die possessed of, or entitled to. at the time of his' death. It was, however, contended that the words, dying without issue, would carry the property over to them by implication, and 1 Pr. Wms. 663. was quoted for that purpose. I have examined this case, and it was much relied on. It was a case in which one possessed of a term devised it to A. and B. and if either of them died without leaving issue of their respective bodies, then to C. This was held to be a good limitation to C. if A. or B. left *73 Pd issue at the time of their death. From this ease, it appeared that A. and B. left no issue at the time of their death, and as the estate was carried .over to C. in .that event, it was a good limitation. So .in the case under consideration, if Thomas, the grandson, had left .no children, the estate to the Godfreys, &c. might have heon a good limitation. But he did leave issue, therefore the remainder never vested. The cases, therefore, in my opinion are by no means parallel. The ease quoted and relied On, from 3 D. fy East. 143, is exactly a similar case. It 'was a case where lands were devised to A. his heirs and assigns for ever, (i. e. a fee simple estate,) and if he should die leaving no issue behind him, then over, &c. this was held to he a good limitation over, by way of an executory devise. If Thomas Wilson had died without issue, this would have been a good executory devise to the Godfreys, &c. In such a case, this authority would have been in point. But as he left three children at the time of his death, it can have no possible .application. The .case of Dott vs. Wilson, in our own court, 1 Bay, 452, was relied on. The words of the will of Mrs. Baker, the devisor, were very different from those in the present case. It came also before the court on a special .verdict, which'stated that “ Sarah Baker bequeathed .one fourth part of her estate, consisting of negroes, to her daughter Sarah Dott, during her life, (without the control of her husband,) and at her death to the heirs of her body, and their heirs and assigns for ever.” The first part of this will created only a life estate in Mrs. Dott; the second part of it created an estate tail, and if it had stopped at the heirs of her body, it would have been too remote, and the property would have vested in her absolutely as the first taker ; but the superadded words, after the words, e< heirs of her body,” and their heirs and assigns for .ever, restrained the generality of the estate tail, and made it a joint tenanejr in her children, who took as purchasers under the mothers will. Now this case is very distinguishable from the one under consideration. In the first place, Mrs. Dott had *74 only a life estate, so that she could not sell dr dd any act which would defeat the right of her children after her death. And in the second place, the words added to that part of the will which would have created an estate tail, altered the very nature of it, and made it a joint tenancy in her children living at the time of her death, who took ao purchasers; whereas, in the case under consideration, the estate given to Thomas Wilson was an absolute and unconditional fee simple, and there was no limitation over to the heirs of his body, or to their heirs nothing is given them by this will; they are merely named in the description of the contingency on which the estate was to go over to the Godfreys, &c. which brings this case under the authority of the case of Bamjield §r Wet ten, (2 Bos, <§’ Puller, 324,) quoted by the counsel for the defendant, in which it was held that where the whole fee is given to one, her heirs and assigns ; no further limitation can be limited upon that fee. From which, it is evident to my mind, that there is nothing in the present testators will which can possibly carry the estate over further than the fee which was vested m Thomas, the grandson, by the terms of the will, unless indeed he had. died without leaving issue at the time of his death. Besides, it was very properly observed by the counsel in the argument for the defendant, that the intention of the testator ought always to govern where it can be discovered. This is a good rule in all doubtful and ambiguous wills; but wherever the will is plain, unequivocal- and in technical law language, it is unnecessary to resort to that rule. If, however, it was necessary to resort to that rule of construction, I think it is reasonable to conclude,, that when the grandfather was alpout disposing of his worldly concerns, that-he would be most solicitous and careful- in making provision for those of his posterity that he knew, and that were then existing, than in providing, for those who were not in being* or who probably might never exist. Hence, the care and circumspection he seems to have exercised in making a division of. his estate between grandsons then living ; and *75 ¿rusting to their care and assiduity, the business of making provision for their offspring in their turn, should they at a future day have any to provide for : And, hence also, the bare meaning or mentioning of such possible offspring as a description of the contingency on which the estate was to go over 'to his distant relations or connexions. But in the case before us, there is no occasion to resort to this rule of construction, as the terms of this will are sufficiently clear and explicit, and expressed in legal terms, so as to vest in the grandson Thomas, a good and absolute estate in fee of the premises in question ; and as such, he had the right to dispose of the same in any manner he thought proper. Iam, therefore, clearly of opinion that judgment ought to be for the defendant, and that the postea should be delivered him to enter up his judgment thereon.
King, for the motion.
Prioleau <§• Wilson, contra. ■
Justices Richardson, Gantt and GolcocJe, concurred.
Mr. Justice Nott, was absent from sickness, and Mr.r Justice Johnson in the court below.
Mr. Justice Huger, dissented.
As the Courts of Law and Equity of this State have differed in the construction of the will, involved in the above case, we deem the importance of tlie principle in question, and the interest the decisions have already excited, must render the possession of the opinions of both courts desirable to the members of the Bar. In consequence of sucfy $n impression, we will here insert the Decree of the Court of Equity.
DECREE.
In the Court of Appeals, Columbia, May, 1822.
Prioleau Wilson, for the motion.
King, contra.